# CHARLESTON

GRANT v. SWANK *et al.*

Submitted February 10, 1914.    Decided April 14, 1914.

1. VENDOR AND PURCHASER—*Vendor's Lien—Contract to Support.*

    A recital that grantees ''agree to care for and support'' grantors ''with money and other necessaries for their support their natural life'', though such agreement was the sole consideration for the grant, will not alone create a lien or charge on the land conveyed. To operate as such, an intent to impose such burden must definitely appear, or be directly inferrable from the grant when properly construed. (p. 96).

2. JUDGMENT—*Personal Decree—Service by Publication.*

    A personal decree against non-resident defendants, not served

otherwise than by publication, and not appearing to the proceeding, is erroneous.   (p. 98).

3.   EQUITY—*Pleading—Relief.*
      Upon a bill stating facts warranting general but not special relief, though praying both, the court may, upon proof deemed sufficient, grant only the general relief, provided it be not inconsistent with that specifically prayed.  (p. 99).

Appeal from Circuit Court, Pleasants County.

Action by A. J. Grant against John H. Swank, Cecil P. Reed, and another.   From judgment for plaintiff defendant Reed appeals.

*Reversed and Remanded.*

*J. Howard Holt,* for appellant.

*G. D. Smith,* for appellee.

LYNCH, JUDGE:

By deed dated February 8, 1908, Alvilda Grant, who was the owner of the fee, and her husband conveyed to John H. Swank and his wife, H. J. O. Swank, a tract of 102 acres of land in Pleasants county.   The deed recites a consideration of "eighteen hundred dollars, cash in hand, the receipt whereof is here acknowledged, and other considerations hereinafter mentioned".   The only recitals indicative of "other considerations" are that the grantees "doth herein agree to care for and support the said Alvilda Grant and A. J. Grant with money and other necessaries for their support their natural life".   The deed contains no provision indicative of an intent to charge or burden the land, or to reserve a lien thereon to secure the faithful discharge of the obligations assumed by the grantees.

H. J. O. Swank, by deed of June 2, 1909, purporting to pass the fee in the entire acreage, but in which John H. Swank did not join, granted the land to J. Warren Reed.

His wife having died, A. J. Grant instituted this suit, to charge the lands with the expenses paid by him incident to her illness and death, and those incurred in the maintenance and support of himself since her death, and to enforce the same by a sale under the decree of the court.   He bases his

right to the relief sought upon the theory that the deed creates a lien on the land conveyed, or a right to charge it with the amounts thus expended, although it does not expressly retain a lien or right to charge it for any purpose. The bill states all these facts in detail, but alleges that the cash consideration was not paid or intended to be paid, but that the sole consideration for the grant was the maintenance and support of the grantors during their joint lives and the life of the survivor. He charges that Reed, at the date of the grant by H. J. O. Swank, had notice of plaintiff's lien and right to charge the land with the expenses of the maintenance and support for which the deed provided and in consideration of which the land was conveyed to J. H. and H. J. O. Swank.

The Swanks and J. Warren Reed are named as defendants, but were not personally served with process. They were proceeded against by publication. Reed tendered an answer, which the court permitted him to file, and to which plaintiff replied generally. H. J. O. Swank did not appear for any purpose. While one of the decrees entered in the cause recites the tender and filing of an answer by J. H. Swank and general replication thereto, no such answer appears in the record. If filed, we can not ascertain what it contains. Although in other respects Reed denies the averments of plaintiff's bill, he does not controvert the statement contained therein as to the real consideration for the grant to the Swanks. Nor does he offer any proof to show that Mrs. Swank was, at the date of her deed, in fact divorced from her husband, warranting the failure to join him as grantor therein; nor does he directly aver that she had obtained a divorce. The only averment of the fact of divorce is that at the date of her deed she was a single woman, "having been divorced from her former husband, John Swank". The mere recital in the deed that the grantor was "usually called Oregon Swank, formerly wife of John H. Swank", and in the certificate of acknowledgment that she was "a single woman of lawful age", do not negative the continuance of a relation existing only a year before.

Having found "that there was reserved a life estate (in the Grant deed) for the support of the grantors therein", and "that the life estate so reserved in said deed is a charge

and lien on said 102 acres of land and liable for the life support and maintenance of the said Alvilda Grant and A. J. Grant during their natural lives'', and ''being unable at this time to ascertain the true amount plaintiff is entitled to recover on account of the expenses and money expended for Alvilda Grant in her life-time, including her funeral expenses and all other expenses incident to her death, and also the amount A. J. Grant is entitled to be paid for his life support and maintenance'', the court directed a reference to a commissioner to ascertain and report the amounts thus incurred and paid, and the amount requisite for the support of plaintiff subsequent to the death of his wife to the date of the decree.

The death of J. Warren Reed being noted of record, the court directed the cause to proceed against Cecil P. Reed, his only son and heir at law; and, confirming the findings of the master, decreed ''that the plaintiff do recover of and against the defendants herein the sum of $72.70 with interest from September 2, 1912, and the sum of $615, being the item for support and maintenance found due in favor of the plaintiff for the period of 123 weeks at the rate of $5 per week from September 23, 1908, until February 8, 1911, with interest'' from the date last named; that said sums ''be and they are declared to be a charge upon the real estate of the defendants''; and directed a sale of the land to satisfy the sums so charged thereon.

Thereafter, but before sale, Cecil P. Reed appeared and tendered his petition, averring the death of J. Warren Reed intestate, that petitioner was his only child and heir at law, that during the previous proceedings in the cause and at the time of filing the petition he was a non-resident of this state, and that he had not therefore been served with process or appeared as a party in the cause. He copies and adopts the answer of his father theretofore filed, and prays to be admitted as such party. The petition, however, contains no prayer for a rehearing or review of the previous proceedings in the cause. But, having found no error, the court approved and confirmed the preceding decrees. Hence this appeal by the petitioner.

While courts of other jurisdictions have, in an apparent

effort to protect aged grantors from the result of their impru-
dence, held provisions similar to that in the Grant deed
effectually creative of a lien, charge or equitable mortgage,
this court has held otherwise, except in cases distinguishable
from that now under review.   If the language used in the
Grant deed may be said to create any lien on the land con-
veyed, or any right to charge it with the support of the grant-
ors, the lien or charge can only be implied.   There is no ex-
press provision or reservation to that effect.   Its language is
rather suggestive of an agreement or undertaking by the
grantees for maintenance and support.   In *Brawley* v. *Catron,*
8 Leigh 522, *McCandlish* v. *Keen,* 13 Gratt. 615, both bind-
ing authorities in this state until disapproved; *Crim* v. *Hols-
berry,* 42 W .Va. 668; *Taylor* v. *Lanier,* 7 N. C. 98, 9 Am. Dec.
599; *Cornell* v. *Maltby,* 165 N. Y. 557, 56 N. Y. S. 1105; *His-
cock* v. *Norton,* 42 Mich. 320; *McKillip* v.*McKillip,* 8 Barb.
552; *Meigs* v. *Dimock,* 6 Conn. 458; *Peters* v. *Tunell,* 43 Minn.
473; *Arlin* v. *Brown,* 44 N. H. 102; *Salyers* v. *Smith,* 67 Ark.
526, similar provisions are held insufficient to create such
lien or charge on the land conveyed.

Though *Bates* v. *Swiger,* 40 W. Va. 420, *McClure* v. *Cook,*
39 W. Va. 579, and *Pownal* v. *Taylor,* 10 Leigh 172, held
agreements sufficient for that purpose, it was because in each
case there was either an express charge created by the deed,
or language importing an intention to reserve a lien on the
land or a right to charge it with the expense incident to the .
wants and necessities of the grantors.   Such reservation
clearly appears in the Bates case.   In the McClure case, the
deed provided for retention by the grantors of the possession
and occupancy of the land "where they now reside so long as
they live", and that the grantee "is not to sell or dispose of
any part or interest in the property without the consent and
approval of" the grantors; thus manifesting an intention on
their part to secure themselves against the improvidence of
the grantee and his lack of fidelity to the obligations thereby
imposed.   The deed in the Pownal case contained the covenant
by the grantee for the support of the grantors, and declared
the land bound therefor "unto whose hands soever it may
come".   Even there, the court held the provision a mere
charge upon the land, enforceable in equity.

While this court has granted relief by way of cancellation because of the failure of the grantee to comply with his agreement to maintain and support, as for a failure of consideration, it has not construed, and feels constrained now to refuse to construe, this or other similar language, without more, as indicative of an intention on the part of the grantors to create either a lien or a charge upon the land conveyed. If either is thus created, the deed or other contract should clearly indicate a purpose to burden it either by a lien or by a charge for that purpose.

But the bill contains allegations which, when sustained by proof, as in effect they are, fully warrant a decree responsive to the prayer for general relief, though not in response to the prayer for specific relief prayed or granted. The court, therefore, had jurisdiction to grant relief under the general prayer. 5 Enc. Dig. 132. As said in *Stewart* v. *Tennant,* 52 W. Va. 559: "Where the allegations of a bill are sufficient to support a decree, and there is a prayer for general relief, and such decree is pronounced, it will stand, although not specifi-· cally prayed for in the bill". So here, had the court upon the hearing granted relief in accordance with the general prayer, by decreeing cancellation of the deed to the Swanks to the exoneration of A. J. Grant's curtesy interest in the 102 acres, it would have had the support of competent authority. · *Furbee* v. *Furbee,* 49 W. Va. 191, 202; *Shoe Co.* v. *Haught,* 41 W. Va. 275; *Goff* v. *Price,* 42 W. Va. 384; *Cumberledge* v. *Cumberledge,* 72 W. Va. 773, 79 S. E. 1010; *Wilfong* v. *Johnson,* 41 W. Va. 283; *White* v. *Bailey,* 65 W. Va. 573. The first three cases sustain the right to grant the prayer for general relief; the others, the right to cancel deeds for failure to comply with agreements for maintenance and support.

Does the deed to Reed interpose an insurmountable barrier to the grant of the prayer for general relief by way of cancellation? To this inquiry the response is, not any greater barrier to the general than to the special relief actually granted. But, as that answer is not fully responsive, we must search the record for another, and, if one appears, determine its preventive effect if any.

The Grant deed vested in the Swanks title to the 102 acres,

an undivided moiety .in each grantee. By her deed Mrs. Swank, her husband not joining with her, undertook to pass title to the whole tract as if she were a single woman and sole owner. While the validity of her deed is not in issue by any pleading, it is obvious that, even if she were divorced, of which there appears neither direct averment nor sufficient proof, she could, and by her deed did, pass only an undivided moiety. J. H. Swank owns the other moiety. But for the grant to the Swanks, plaintiff would, upon the death of his wife, have become tenant by the curtesy of the whole tract. So, conceding, for present purposes alone, the due execution of the deed to Reed and its efficacy as a grant of Mrs. Swank's moiety, a cancellation of the deed as to the other moiety would restore to plaintiff his curtesy right in the latter. But the record, as presented, limits the relief available, even under the prayer for general relief, to the partial cancellation suggested. The record does not warrant other or more complete relief. However, if so advised, plaintiff may, on remand, amend his bill in order to raise an issue as to the validity of the H. J. O. Swank deed to Reed.

The decree is erroneous also in another respect. There is a personal decree against all the defendants. Mrs. Swank, though named as a party, did not appear for any purpose. She was not a resident of the state. The bill so avers. The decree of July 12, 1912, by recitals, shows that the only process invoked to convene defendants was by order of publication. Upon such process alone without an appearance in person or by counsel, it was error to pronounce a personal decree.

Without expressing an opinion as to the validity of the deed by H. J. O. Swank to J. Warren Reed, its due execution not being in issue, or as to other questions discussed in argument, none of which are important in view of what has been said, our conclusion is to reverse the decrees of September 19, 1911, July 12, 1912, January 29 and March 20, 1913; and to remand the cause, with leave to plaintiff to amend the bill if so advised.

*Reversed and Remanded.*